IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL C. ALBERTY, JACQUELINE ALBERTY, JOHN M. ALBERTY, a minor child, ANASTASIA M. ALBERTY, a minor child, and GABRIELLE M. ALBERTY, a minor child, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | |
| v. | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

Civil Action No. 05 - 1319

Judge Joy Flowers Conti
Magistrate Judge Lisa Pupo Lenihan

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Plaintiffs' Motion for Partial Dismissal of Plaintiffs' Amended Complaint be denied in part and granted in part. It should be denied as to Count II, Paragraph 28(f); Count III and denied as moot as to Count IV.  It should be granted as to Count V.

**II. REPORT**

As more fully set forth in this Court's November 29, 2005 Report and Recommendation, denying Plaintiffs' Motion for Remand, this case involves claims related to Defendant's conduct in respect of an automobile policy insuring Plaintiffs at the time of a motor vehicle accident in August, 2003.  For the reasons set forth below, Plaintiffs' Motion for Partial Dismissal should be denied as to Count II, Paragraph 28(f); Count III and Count IV.  It should be granted as to Count V.

### A. Statement of Facts and Procedural History

The facts of the case have been summarized in this Court's November 29, 2005 Report and Recommendation denying Plaintiff's Motion for Remand.  In brief, Nationwide Mutual Insurance Company ("Defendant" or "Nationwide") sold full tort automobile insurance (the "Policy") to Plaintiff Michael Alberty for approximately twenty-five (25) years.  The Policy provided for maximum medical benefits of $10,000 per person and maximum lost income benefits of $25,000.  In August, 2003, an improperly mounted tire came away from its wheel while the Alberty family, including three young children, was traveling.  All members of the family sustained injury and sought medical treatment, including chiropractic treatment for the children, through mid-March, 2004.  Chiropractic services provided included "adjunctive services" delegated by the chiropractor to assistant personnel.

In March, 2004, Nationwide filed, in the Court of Common Pleas of Washington County, Pennsylvania, a civil Complaint for Declaratory Judgment related to the chiropractic bills, contending that the adjunctive services were outside its policy coverage (the "Declaratory Judgment Action").  Defendant named each member of the Alberty family as a Defendant in its Complaint, including the children, ages nine (9), seven (7) and five (5).  Defendant also had an armed and uniformed sheriff serve process on each family member, including the young children.  The action was subsequently voluntarily withdrawn by Praecipe by the Defendant, after having been briefed and argued.[1]

---

1. Defendant also submitted charges from the chiropractor to a Peer Review Organization ("PRO") for an evaluation of their medical necessity.  The PRO concluded that all treatments provided to the parents, and some treatments provided to the children, were necessary.

Following some preliminary pleadings before this court, Plaintiffs' Amended Complaint was filed on January 9, 2006 and alleges breach of contract, statutory bad faith (42 Pa.C.S. § 8371), violation of the Unfair Trade Practice Consumer Protection Law (the "UTPCPL"), violation of the Pennsylvania Motor Vehicle Financial Responsibility Law (the "MVFRL"), and wrongful use of civil proceedings in violation of the Dragonetti Act (42 Pa.C.S. § 8351). Defendant has - in its clear and concise pleading - moved to dismiss those portions of the Complaint asserted to allege violation of the Unfair Insurance Practices Act (the "UIPA"), the UTPCPL, the MVFRL, and the Dragonetti Act.[2] Defendant does not challenge the legal sufficiency of Plaintiffs' claims for breach of contract or statutory bad faith.

### B. Motion to Dismiss

In accordance with Federal Rule of Civil Procedure 12(b)(6), the Court may grant a motion to dismiss only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997); Pennsylvania House, Inc. v. Barrett, 760 F.Supp. 439, 449-50 (M.D. Pa. 1991). A Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims. See United States v. Marisol, Inc., 725 F.Supp. 833, 836 (M.D. Pa. 1989). And the movant carries the burden of showing the legal insufficiency of the claims asserted. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).

---

2. See Brief in Support of Defendant's Motion for Partial Dismissal ("Brief in Support") at 3-5.

C. <u>Analysis</u>

1. <u>Paragraph 28(f) - Bad Faith as Defined by the Unfair Insurance Practices Act</u>

Defendant seeks dismissal of this paragraph of the Amended Complaint as impermissibly alleging that it may be liable for violation of the Unfair Insurance Practices Act, 40 P.S. § 1171.5.[3] In response, however, Plaintiffs clarify that this paragraph is intended to make no such claim. Rather, Plaintiffs attest that this paragraph's recitation of the definition of "bad faith" under the Unfair Insurance Practices Act is provided solely by way of analogy, in support of the uncontested statutory bad faith claim which *is* the subject of this Count. See Brief in Opposition at 4-5.[4] In that Plaintiffs acknowledge they are not entitled to seek relief under the Unfair Insurance Practices Act, and do not include this paragraph for that purpose, Defendant's Motion to Dismiss this paragraph should be denied.[5]

2. <u>Violation of the UTPCPL</u>

To assert a cause of action under the UTPCPL, a defendant's alleged conduct must rise to the level of unfair or deceptive practices as defined by 73 P.S. § 201-2(4). The legislation is

---

3. <u>See</u> <u>id.</u> at 5-6 (observing that "Pennsylvania law is well settled that there is no private cause of action afforded to an insured against an insurer for violations of the [UIPA] or other insurance regulations") (citing, *e.g.*, <u>Romano v. Nationwide Insurance Co.</u>, 646 A.2d 1228, 1232 (Pa. Super. 1994)).

4. <u>See</u> also <u>Romano,</u> 646 A.2d at 1232 (concluding that, as the § 8371 statutory bad faith provisions do not include a definition for an insurer's bad faith, the court may consider what conduct constitutes "bad faith" in violation of the UIPA or "other statutes upon the same or similar subjects").

5. <u>Cf.</u> <u>Lites v. Great American Ins. Co.</u>, 2000 WL 875698, **6-7 (E.D. Pa. June 23, 2000) (denying motion to dismiss and declining to strike paragraphs citing to the UIPA, where such paragraphs premised their allegations upon a violation of the UTPCPL); <u>id.</u> (noting that although no private allegation of a UIPA violation can be maintained, "factual allegations falling within the purview of the UIPA are not precluded from supporting a private allegation of a UTPCPL violation").

intended to advance the prospective fairness of market transactions in which seller and consumer are on less-than-equal footing, and, accordingly, the Pennsylvania courts construe it liberally to effectuate its purpose. See Lites v. Great American Ins. Co., 200 WL 875698 (E.D. Pa. June 23, 2000) (citing, *e.g.*, Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa. Super. 1999)). The statute permits an award of up to three times the actual damages sustained as a result of the unfair or deceptive practices proscribed. See 73 P.S. § 201-2; 9.2(a).

In Briefs presenting a focused and well-supported discussion of this Count, the parties concur that, under Pennsylvania law interpretive of the UTPCPL, a simple wrongful refusal to pay insurance benefits is nonfeasance - as opposed to misfeasance - and not actionable. See Brief in Support at 6 (duly noting that the UTPCPL "does not provide a private right of action for any insurer's mere refusal to pay a claim") (citing Smith v. Nationwide Mutual Fire Ins. Co., 935 F.Supp. 616, 623 (W.D. Pa. 1996).  They differ, however, as to the more significant question, *i.e.*, whether Plaintiffs have made an allegation sufficient to support a claim of any affirmative act of "improper performance of a contracted obligation"[6] (*i.e.*, actionable misfeasance) on Defendant's part.

Although it is true that no claim under the UTPCPL will lie where the "fundamental basis" or "substance" of the alleged violation is "the mere denial of an insurance claim", in some circumstances an "improper handling" of claims under an automobile insurance policy may give rise to an action under the UTPCPL. See Brief in Support at 6-8. Compare Gordon v. Pennsylvania Blue Shield, 548 A.2d 600,  (Pa. Super. 1988) (holding that  where "[t]he only act

---

6. See Brief in Opposition at 6 (quoting Gordon v. Pa. Blue Shield, 548 A.2d 600 (Pa. Super. 1988)).

alleged . . . was the refusal of [insurer] to pay benefits to which [insured] felt entitled" and the allegations were "grounded in [insurer]'s failure to take certain actions in the handling of [insured]'s claim", the conduct was solely nonfeasance) with Carlucci v. Md. Cas. Co., 1999 U.S. Dist. LEXIS 3156 (E.D. Pa. Mar. 15, 1999) (denying motion to dismiss and concluding that if plaintiff could establish facts to support allegations that defendant failed to "investigate, evaluate, negotiate and otherwise handle her claim *properly*" she could be entitled to relief) (emphasis in original); Abramson v. State Farm Ins., 1993 U.S. Dist. LEXIS 5157 (E.D. Pa. April 16, 1993) (holding that allegations that defendant failed to promptly resolve claim or objectively and fairly evaluate claims, concocted a frivolous defense, and unnecessarily and unreasonably compelled plaintiffs to file suit, were sufficient to state claim of affirmative, bad faith conduct under the UTPCPL); Lites v. Great American Ins. Co., 200 WL 875698 (E.D. Pa. June 23, 2000) (concluding that allegations of deliberate and unwarranted delay, and "a litany" of efforts to "dissuade and obfuscate" rightful claims, stated claim of improper affirmative acts).[7]

  This Court should conclude that, in moving for dismissal because "[m]ere non-payment of a claim is not actionable under the UTPCPL",[8] Defendant too narrowly characterizes the tone of the Amended Complaint. Rather, the Complaint's assertions, which include those regarding Defendant's (a) non-payment of chiropractic bills and lost income and (b) declaratory judgment litigation, may fairly also be read to allege affirmative, intentional efforts to delay, dissuade,

---

7. As the Pennsylvania Supreme Court has not yet defined "misfeasance" in the context of the UTPCPL, we look to the views of other courts within the Commonwealth and our sister federal courts.

8. Brief in Support at 8.

obstruct, or otherwise "improperly handle", Plaintiff's claims.[9] Thus, giving the Amended Complaint its proper scope - and particularly in light of the federal laws governing standards of pleading and motions to dismiss, as well as the liberal interpretation due to the UTPCPL - this Court should deny Defendant's Motion to Dismiss this Count.[10]

### 3. Violation of the MVFRL

Defendant seeks dismissal of Count IV of the Amended Complaint, alleging a claim under the Pennsylvania MVFRL, 75 Pa.C.S. § 1797.[11] As Plaintiffs have now voluntarily withdrawn this Count,[12] Defendant's Motion to Dismiss it should be denied as moot.

### 4. Dragonetti

---

9. See Lites, 200 WL 875693 at *5 (citing complaint allegations of "improperly investigating claims" and "engaging in litigation with an intent to delay" in denying motion to dismiss UTPCPL claim). See also Amended Complaint at 10 (asserting that the declaratory judgment action was brought for improper purposes such as delay and obstruction (*e.g.*, through the imposition of legal expenses)).

10. See Lites, 2000 WL 875698 at *3 (noting the "significant distinction" between a motion to dismiss and one for summary judgment and contrasting cases in which a court granted summary judgment on a UTPCPL claim). This Court notes that several of the summary judgment cases distinguished in Lites are cited by the Defendant *sub judice* in support of its Motion to Dismiss. See Brief in Support at 6-7.

See also Seidman v. Minnesota Mut. Life Ins. Co., 40 F.Supp.2d 590, 596 (E.D. Pa. 1997) (comparing allegation of misfeasance sufficient to withstand motion to dismiss under more lenient standard applied, with evidence required to survive motion for summary judgment); Clugston v. Nationwide Mut. Ins. Co., 2006 WL 1290450, *3 (M.D. Pa. May 10, 2006) (denying motion to dismiss statutory bad faith count where allegations were "sufficient . . . at this juncture of the case" but noting that "[w]hether such [assertions] can be established must await the outcome of discovery"); id. at *4 (similarly denying motion to dismiss as to UTPCPL count)

11. See Brief in Support at 4 (also asserting, *e.g.*, that pursuit of an action under this section relative to a denial of medical benefits supported by a Peer Review would preempt any claim of statutory bad faith as to the same denial); id. at 9-10 (citing Harris v. Lumberman's Mut. Ins. Co. (E.D. Pa. Civil Action 05-5228, Jan. 23, 2006)).

12. See Brief in Opposition at 7.

Finally, Defendant seeks dismissal of Count V of the Amended Complaint, alleging a claim for "wrongful use of civil proceedings" under the Dragonetti Act, 42 Pa.C.S. § 8351(a). A cognizable claim under the Dragonetti Act requires that the litigant have acted "in a grossly negligent manner or without probable cause" *and* "primarily for an [improper] purpose . . . ." Id.[13] It further requires that "[t]he proceedings have terminated in favor of the person against whom they are brought." Id.[14] The question presently before this Court is whether it appears beyond doubt that Plaintiffs cannot succeed on a claim that Defendant acted without probable cause. See Defendant's Reply Brief at 2 ("The principal contest relative to this count is whether Plaintiffs have sufficiently averred the critical element of a lack of probable cause to initiate the underlying declaratory judgment action.").[15] The Court notes that a party bringing an action

---

13. To the extent that Plaintiffs' Brief in Opposition may be read to suggest that a claim under the Dragonetti Act may be sustained *solely* on the basis of an improper purpose, it is in error. See Plaintiffs' Brief in Opposition at 9 ("Finally, Count V should not be dismissed because there is a factual issue as to whether the declaratory judgment proceedings were initiated for an improper purpose.").

14. Defendant asserts that this Count is unsustainable as a matter of law owing to the absence of the "critical element of a termination of said action in favor of the instant plaintiffs." Brief in Support at 4. As Plaintiffs note, "[w]hether withdrawal . . . constitutes a final termination of the case in favor of the person against whom the proceedings are brought depends on the circumstances under which the proceedings are withdrawn." Bannar v. Miller, 701 A.2d 242, 247 (Pa. Super. 1997) (quoted in Plaintiff's Brief in Opposition at 9). See also Restatement (Second) of Torts § 674, comment (j) (same) (quoted in Defendant's Brief in Support at 14, which alternatively defines the standard as requiring a "final disposition . . . consistent with the innocence of the accused"); Doby v. Decrescenzo, 1996 WL 510096, *16 (E.D. Pa. Sept. 9, 1996) (holding that a "favorable termination within the meaning of the[Dragonetti Act] need not be an adjudication on the merits; favorable termination can occur as a result of a voluntary withdrawal of the underlying proceeding or an abandonment") (citations omitted).

15. As Defendant observes, Plaintiffs make no claim of gross negligence. The Act defines "probable cause" to exist where the litigant "reasonably believes that under [the] facts the claim may be valid under existing or developing law." 42 Pa. C.S. § 8352.

8

under the Dragonetti Act "bears a heavy burden."  U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002).

The Declaratory Judgment Action filed by Defendant against the Alberty family on March 16, 2004 sought a declaration that Nationwide's insurance policy did not cover the chiropractic adjunctive procedures.  At the time, the Pennsylvania Chiropractic Practices Act, 63 P.S. § 625.601 (the "PCPA"), provided that a licensed chiropractor could use

> the assistance of unlicensed supportive personnel performing under [his/her] direct on-premises supervision . . . provided that a chiropractor may not delegate any activity or duty . . . which requires formal education or training in the practice of chiropractic or the knowledge and skill of a licensed chiropractor.

63 P.S. § 625.01.  The Act further required that all chiropractors be licensed, and required certain special certification for "adjunctive procedures".  See id. at §§ 625.521, .102, .304.  In addition, the Pennsylvania Insurance Department had issued four proclamations upholding the propriety of the delegation of adjunctive procedures under the Act.[16]  Approximately three months after the filing of Nationwide's Dclaratory Judgment Action, on June 28, 2004, our sister Court in the Eastern District of Pennsylvania issued its holding on the text and legislative history of the PCPA.  That Court concurred with the Pennsylvania Insurance Department, holding that adjunctive procedures requiring special certification could nonetheless be delegated to licensed personnel without loss of insurance coverage, in accordance with § 625.601.  See State Farm

---

16.  See, *e.g.*, Defendant's First Motion to Dismiss, Ex. A-5 (setting forth Department's position that insurers are required to reimburse chiropractors for adjunctive procedures unless the insurer has obtained a determination from the Chiropractic Licensing Board that such delegation was improper); id. (indicating that an insurer's refusal to so reimburse would be in violation of the Unfair Insurance Practices Act).

Mut. Auto Ins. Co. v. All-Care Chiropractic, 2004 WL 1446033 (E.D. Pa. June 28, 2004). The Declaratory Judgment Action was voluntarily dismissed by Nationwide sometime thereafter.

Defendant asserts that its litigation against the Alberty family was reasonable because the language of the PCPA was unclear and the issuances of the regulatory Department were neither determinative nor preclusive of Defendant's right to request a judicial interpretation of the statutory provisions (*i.e.*, adjudication of whether a chiropractor's delegation of adjunctive services requiring separate certification, but not a chiropractic license, removes such services from the scope of Nationwide's insurance coverage). See State Farm, 2004 WL 1446033 (determining that resolution of the question of adjunctive services required extensive review of the legislative history and prediction of the Pennsylvania Supreme Court's judicial interpretation). Plaintiffs assert that the litigation was without reasonable basis and "intended as a test case" to invalidate the provisions of the PCPA and Department proclamations. See Amended Complaint at 3-4, 6.

As noted above, whatever improper motives may or may not have accompanied Nationwide's conduct in this case, to sustain a cause of action for wrongful use of civil proceedings under the Dragonetti Act Plaintiffs must also make out an absence of probable cause for the subject litigation. This they cannot do. In light of the law in this area, the allegations of this Count of the Amended Complaint simply cannot establish a cognizable claim.[17]

---

17. The Court distinguishes the legal question of the existence of probable cause essential to this cause of action from the fact questions, regarding, *e.g.,* other conduct and improper motive, underlying Plaintiffs' cause of action in Count III. See Dietrich Industries, Inc. v. Abrams, 455 A.2d 119, 124 (Pa. Super. 1982) (noting that "what constitutes probable cause and whether it exists under an admitted or clearly established set of facts are questions of law for the court to determine").

III. <u>CONCLUSION</u>

      For the reasons set forth above, Plaintiffs' Motion for Partial Dismissal should be denied as to Count II, Paragraph 28(f); Count III and denied as moot as to Count IV. It should be granted as to Count V.

      In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.


Dated: July 7, 2006                                                             /s/Lisa Pupo Lenihan
                                                                                     LISA PUPO LENIHAN
                                                                                     United States Magistrate Judge



cc:      The Honorable Joy Flowers Conti
           United States District Judge

           All Counsel of Record